# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Deutsche Bank National Trust Co. v. Nichols*, 2013 IL App (1st) 120350**

---

| | |
|---|---|
| Appellate Court Caption | DEUTSCHE BANK NATIONAL TRUST COMPANY, Plaintiff-Appellee, v. TIJUANA NICHOLS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0350 |
| Filed<br>Rehearing denied | August 30, 2013<br>November 15, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a mortgage foreclosure proceeding, the trial court's entry of a final order approving the sale of the property was upheld over defendant's contention that the order was void because it was entered while defendant's petition for substitution of judge for cause was still pending, since defendant failed to pursue a ruling on the petition and the petition did not meet the threshold requirements for such a petition, including the requirement that it allege bias stemming from an extrajudicial source. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-13270; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on          Tijuana L. Nichols, of Glenwood, appellant *pro se*.
Appeal

                    Keith H. Werwas, of Potestivo & Associates, P.C., of Chicago, for
                    appellee.


Panel               JUSTICE REYES delivered the judgment of the court, with opinion.
                    Justice Hall concurred in the judgment and opinion.
                    Justice Gordon dissented, with opinion.

**OPINION**

¶ 1     Following the entry of default judgment of foreclosure and the subsequent confirmation of the sale of the related property, *pro se* defendant Tijuana Nichols (Nichols) filed an appeal challenging the trial court's final order approving the sale. Nichols filed a petition to substitute judge for cause after the trial court denied her leave to file an answer and affirmative defenses in the matter. Nichols argues the order approving the sale of the property must be voided because the trial court entered the order before ruling on her petition. For the following reasons, we affirm the decision of the circuit court of Cook County.


¶ 2                                    BACKGROUND

¶ 3     On April 7, 2011, plaintiff Deutsche Bank National Trust Co. (Deutsche Bank) filed a complaint in the circuit court of Cook County initiating mortgage foreclosure proceedings against Nichols. Upon Deutsche Bank's request, the trial court then appointed a special process server who, on April 25, 2011, effected substitute service pursuant to section 2-203(a)(2) of the Code of Civil Procedure (735 ILCS 5/2-203(a)(2) (West 2010)) by serving Nichols' abode located at 417 West Holly Court in Glenwood, Illinois.[1] On July 20, 2011, Deutsche Bank presented a motion for entry of default judgment of foreclosure as Nichols had not yet filed an answer or appearance in the case. Nichols did not appear in court on July 20, 2011, and the trial court therefore granted default judgment in favor of Deutsche Bank.

¶ 4     On November 18, 2011, however, Nichols filed a motion for leave to file an answer and

---

[1]Throughout the litigation, Deutsche Bank continued to serve Nichols with copies of its filings at this address. Nothing in the record indicates Nichols' address changed during the pendency of the litigation.

affirmative defenses in the matter.[2] The trial court denied this motion on December 1, 2011, holding "service occurred over seven months ago [and Nichols'] request came post judgment and sale of the property."[3] A week later, on December 7, 2011, Nichols filed a petition[4] to substitute judge for cause pursuant to section 2-1001(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(3) (West 2010)). Nichols asserted two reasons as evidence of judicial bias: (1) Deutsche Bank allegedly "never served [her] with notice of [default judgment]"; and (2) the trial judge denied her motion for leave to file an answer and affirmative defenses. Nichols spindled her petition with the clerk of the court, scheduling the matter to be heard on January 26, 2012.

¶ 5    Subsequently, Deutsche Bank filed a motion requesting the trial court enter an order approving the sale of the property. The clerk of the court scheduled a hearing on this motion for January 25, 2012 and, consequently, the trial court entered an order approving the sale of the property on that date. There is no record of Nichols' appearing in court on January 25 to contest the confirmation of the sale. The record also does not reflect whether Nichols delivered a copy of her petition to the judge or whether she appeared in court on January 26 to present and argue her petition. In any event, the record does indicate the trial court never entered an order granting or denying Nichols' petition for substitution of judge. Nichols now appeals the trial court's final order as void.[5]

¶ 6                                ANALYSIS

¶ 7    On appeal, Nichols argues the trial court lacked the authority to enter the final order in this case while her substitution of judge petition was still pending. The question of whether the trial court had legal authority to enter final judgment in this case is a question of law. See *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶ 81. Accordingly, we review this question *de novo*. *Id.*

¶ 8    In Illinois, requests for substitution of judge are controlled by statute. See 735 ILCS 5/2-

---

[2]In her motion, Nichols did not request the trial court vacate the default judgment. Additionally, Nichols did not challenge service in a motion to quash.

[3]Nichols' failure to file a timely response to the complaint resulted in forfeiture of any affirmative defenses. See *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 6-7 (2010).

[4]Under the statute, the request for a substitution of judge is referred to as a "motion" when made as a matter of right, and as a "petition" when made for cause. See 735 ILCS 5/2-1001 (West 2010); see also *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 28. As Nichols sought a substitution of judge for cause in this matter, we will refer to her request as a "petition" herein.

[5]In its brief, Deutsche Bank incorrectly characterized this case as an interlocutory appeal. Nichols' notice of appeal indicates she appeals the January 25 order approving the sale, a final judgment. Accordingly, this court has jurisdiction under Supreme Court Rule 303. See Ill. S. Ct. R. 303(a) (eff. June 4, 2008).

1001 (West 2010). A party may request a substitution of judge either "as of right" or "for cause." 735 ILCS 5/2-1001(a)(2), (a)(3) (West 2010). A motion for substitution of judge as of right will be granted "if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties." 735 ILCS 5/2-1001(a)(2)(ii) (West 2010). If a party may no longer bring a timely motion for substitution of judge as of right, that party may still petition the court for a substitution of judge for cause. 735 ILCS 5/2-1001(a)(3)(i) (West 2010). The petition must "set[ ] forth the specific cause for substitution" and must be "verified by the affidavit of the applicant." 735 ILCS 5/2-1001(a)(3)(ii) (West 2010). Upon the filing of the petition, "a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition." 735 ILCS 5/2-1001(a)(3)(iii) (West 2010). However, "a party's right to have a petition for substitution of judge heard by another judge is not automatic." *In re Estate of Wilson*, 238 Ill. 2d 519, 553 (2010). A judge may deny a petition without referring it to another judge if it fails to meet threshold requirements. *Id.* at 567. Specifically, the trial court may deny the petition if it: (1) was not timely filed; (2) failed to include an affidavit; or (3) alleged bias not stemming from an extrajudicial source. *Id.* In some cases, judges may consider whether the petition was filed in good faith or for purposes of delay, but this "may require a more complex and nuanced analysis." *Id.* at 567-68.

¶ 9        In arguing the trial court lacked authority to enter any further orders in this case, Nichols directs us to the criminal counterpart of the controlling civil statute. The criminal statute, section 114-5(a) of the Code of Criminal Procedure of 1963, provides "[u]pon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion." 725 ILCS 5/114-5(a) (West 2010); see also *People v. Bell*, 276 Ill. App. 3d 939, 947 (1995). Of course, this is not a criminal case and, therefore, the Code of Criminal Procedure does not apply here. Further, section 114-5(a) specifically applies to automatic substitutions of judge as of right, not for-cause substitutions similar to the one requested here. See, *e.g.*, *People v. Saltzman*, 342 Ill. App. 3d 929, 932 (2003) ("Section 114-5(a) of the [Code of Criminal Procedure] provides a defendant with an absolute right to a substitution of a judge if the defendant files a timely written motion for substitution."). Moreover, the fact the legislature included the phrase "the court shall proceed no further" in the criminal statute, but did not similarly include it in the civil statute, raises the inference that the filing of the petition should only automatically divest a judge's powers under the circumstances provided under section 114-5(a). Compare 725 ILCS 5/114-5 (West 2010), with 735 ILCS 5/2-1001 (West 2010); see also, *e.g.*, *Community Unit School District 200 v. Illinois Insurance Guaranty Fund*, 358 Ill. App. 3d 1056, 1063 (2005) (noting the "presence" of a rule in one part of the statute and simultaneous "absence" of the rule in another part of the statute suggests the "legislature intended" the omission).

¶ 10       Despite this apparent inference, this court has previously stated in civil cases, "once a motion for substitution of judge for cause is brought, that judge loses all power and authority over the case and any orders entered after a judge's removal or after an improper denial of such motion are of no force or effect." *In re Petition of C.M.A.*, 306 Ill. App. 3d 1061, 1067 (1999). For this proposition, the court in *C.M.A.* cited three cases: *Jiffy Lube International,*

*Inc. v. Agarwal*, 277 Ill. App. 3d 722, 727 (1996), *People v. Bell*, 276 Ill. App. 3d 939, 946-47 (1995), and *In re Marriage of Cummins*, 106 Ill. App. 3d 44, 47 (1982). In light of our supreme court's decision in *Estate of Wilson*, we no longer find these three cases still stand for the proposition cited in *C.M.A.*.

¶ 11     First, we note *People v. Bell* is a criminal case governed by a separate criminal statute not applicable here.[6] Second, *Marriage of Cummins* considered whether a motion for substitution of judge as of right was timely filed[7]; this case and *C.M.A.* both concern for-cause requests. Third, the Illinois Supreme Court has since effectively overruled the language from *Jiffy Lube* upon which the court in *C.M.A.* relied. See *Estate of Wilson*, 238 Ill. 2d at 559-60.

¶ 12     Regarding this last point, this court stated in *Jiffy Lube* that a judge may not deny a for-cause petition without referring that petition to another judge. *Jiffy Lube*, 277 Ill. App. 3d at 727. According to the court in *Jiffy Lube*, "[s]uch a procedure is not in compliance with the statute, which mandates that such a petition shall be heard by a judge other than the judge named in the petition." *Id.* In *Estate of Wilson*, however, our supreme court noted such an interpretation of section 2-1001(a)(3) was flawed. See *Estate of Wilson*, 238 Ill. 2d at 560. According to the supreme court, the appellate court in *Jiffy Lube* "applied the plain language of section 2-1001(a)(3) of the Code of Civil Procedure [citation] to conclude that the defendant's motion for substitution of judge should not have been heard by the judge named in the petition." *Id.* at 559. Following this discussion of *Jiffy Lube*, the supreme court turned to the appellate court's decision it was reviewing. *Id.* at 559-60. Specifically, the supreme court stated the appellate court below had "overlook[ed] *** an important exception" to statutory construction. *Id.* at 560. Instead of applying the plain or literal interpretation of the statute, as the appellate court did in *Jiffy Lube*, the court should have interpreted the statute

_____

[6]The dissent relies on language from the Illinois Supreme Court, which states as a general proposition that section 2-1001(a)(3) and section 114-5(d) of the Code of Criminal Procedure are "virtually identical" and should be "construed and applied similarly." *Estate of Wilson*, 238 Ill. 2d at 563-64. Thus, according to the dissent, *Bell*'s interpretation of the criminal provision should guide our analysis here. See *infra* ¶ 27. Regardless, in *Estate of Wilson*, the Illinois Supreme Court specifically construes section 2-1001(a)(3) in a way that avoids the "disruption" to the litigation that would occur if "unscrupulous litigants" were allowed to frivolously stall any case at any time. See *Estate of Wilson*, 238 Ill. 2d at 561-62. We believe this interpretation of the relevant civil provision recently offered by our supreme court controls over any previous interpretation of the related criminal provision offered by this court.

[7]The court in *In re Marriage of Cummins* did not apply section 2-1001(a), but instead applied the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, ¶¶ 501, 503 (formerly Ill. Rev. Stat. 1975, ch. 146)). The section of the Civil Practice Act applicable in that case is most akin to the substitution of judge as of right provision, or section 2-1001(a)(2) of the Code of Civil Procedure. Compare Ill. Rev. Stat. 1979, ch. 110, ¶¶ 501, 503, with 735 ILCS 5/2-1001(a)(2) (West 2010). Indeed, the issue in *In re Marriage of Cummins* was whether or not the motion was timely filed before the judge made a substantive ruling in the case, an issue relevant to a motion for substitution of judge as of right, but not relevant to a petition for substitution of judge for cause. *In re Marriage of Cummins*, 106 Ill. App. 3d at 47-48.

in a way that did not "produce absurd, inconvenient or unjust results." *Id.* Regarding for-cause petitions, "[i]f it were literally true that a hearing *** had to be conducted by another judge '[u]pon the filing of a petition for substitution' [citation], an unscrupulous litigant could effectively bring an immediate halt to any pending civil case[ ] at any time." *Id.* Thus the supreme court interpreted the statute to avoid this "potential for abuse." *Id.* at 562. In order to prevent litigants from "unilaterally halt[ing] trial proceedings," the court found a judge may deny a petition without referring it to another judge if the petition did not meet the "threshold timing, pleading, or procedural requirements" delineated above. *Id.* at 561.

¶ 13    Not only does *Estate of Wilson* effectively overrule the relevant portions of *Jiffy Lube*, but it also necessarily renders the proposition from *C.M.A.* at least partly incorrect. Indeed, if a judge lost *all* power and authority upon the filing of a petition for substitution of judge, that judge would no longer have the authority to deny the motion on threshold grounds. Further, after taking into consideration the supreme court's interpretation of the statute, we do not find a judge's power and authority in a case after the filing of a for-cause petition is limited to merely making a threshold determination on the petition for substitution of judge. If that were the case, the statute would still allow parties to abuse the for-cause petition and "effectively bring an immediate halt to any pending civil case." *Estate of Wilson*, 238 Ill. 2d at 560. While the statute permits a party to file only one as-of-right motion, it does not similarly limit the number of for-cause petitions a party may file. See 735 ILCS 5/2-1001(a)(3) (West 2010). Consequently, if the mere filing of the petition were to immediately force the trial court to suspend all other issues in the case, for-cause petitions could routinely result in procedural delays. As our supreme court admonished in *Estate of Wilson*, this court should not construe section 2-1001(a)(3) to encompass such a rule.

¶ 14    This, of course, is not to say we endorse judges proceeding as usual after the filing of a for-cause petition. Naturally, judges "have a powerful incentive to err on the side of caution" because "where the appellate court subsequently determines that the petition should have been allowed, all of their subsequent rulings in the case will be invalidated." *Estate of Wilson*, 238 Ill. 2d at 568.

¶ 15    That being said, the concerns of *Estate of Wilson* are particularly relevant in a high volume court such as mortgage foreclosure. As the facts of this case demonstrate, the filing and scheduling of a petition with the clerk's office does not mean the trial court has been immediately apprised of the issues contained in that filing. For example, the parties dispute whether Nichols properly served the trial court with a courtesy copy of the petition.[8] This

---

[8]The Code of Civil Procedure and Illinois Supreme Court Rules vest the circuit court and its judges with the power to "adopt rules governing civil and criminal cases." Ill. S. Ct. R. 21(a) (eff. Dec. 1, 2008); 735 ILCS 5/1-104(a) (West 2010). Per the general standing order in mortgage foreclosure court, "[m]ovants must supply the court with copies of all documents relevant to the hearing of any particular matter, including pleadings." Circuit Court of Cook County Mortgage Foreclosure Courtroom Procedures, Calls and Motions Generally (II) (rev. Jan. 28, 2012). Per the standing order in effect for Calendar 59 at the time of litigation:

"As the court files are stored in the Clerk of the Court's Office, the moving party is responsible for providing courtesy copies to the court no later than *four court days prior* to

raises the question of whether the trial court could have even been aware of the pending petition when ruling on Deutsche Bank's January 25 motion. Such a situation is not unique. In between the time of the filing and the time of the scheduled hearing, it is not guaranteed a judge will be aware of and able to review the petition before ruling on any other pending matters in the case. Thus, to require a judge to immediately suspend all pending issues in a matter would allow a for-cause petition under section 2-1001(a)(3) to become a vehicle for delay. This exact concern over delay guided the Illinois Supreme Court's interpretation of section 2-1001(a)(3) in *Estate of Wilson*, and likewise guides our decision here. Accordingly, we find the statute did not divest the trial judge of the authority to enter further orders in this case.

¶ 16    Since the filing of the petition does not automatically void the final order, Nichols must show the petition was improperly denied. See *Estate of Wilson*, 238 Ill. 2d at 568. The record, however, reveals the trial court never ruled on the petition. Nichols, as the petitioner, carried the burden of apprising the court of her petition, presenting it in open court, and obtaining a ruling on it. See *Village of Maywood v. Health, Inc.*, 104 Ill. App. 3d 948, 955 (1982) ("It is well established that when the court reserves a ruling, the movant must seek a decision or ruling in order to preserve the motion for review."); Cook Co. Cir. Ct. R. 2.3 (July 1, 1976) ("The burden of calling for hearing any motion previously filed is on the party making the motion."). Nothing in the record indicates Nichols appeared at the hearing on January 25 to oppose the entry of the final order or raise the issue of her pending petition for substitution of judge. Nor does the record demonstrate Nichols appeared on January 26, when her petition was scheduled to be heard.[9] Nichols thus failed to meet her burden as the petitioner to preserve this issue for review.

¶ 17    Finally, even if Nichols pursued a ruling on the petition, it still did not meet the threshold requirements of *Estate of Wilson*. In particular, the petition failed to allege any bias stemming from an extrajudicial source. Nichols' petition set forth two facts as evidence of the trial court's bias. The first fact–Deutsche Bank failed to give her notice of default judgment–cannot be attributed to the trial court. The second fact–the trial court denied her motion for leave to file an answer and an appearance–is a prior ruling which, on its own, does not reveal any bias at all. A judge's previous rulings can only constitute a valid basis for a claim of judicial bias if "they reveal an opinion that derives from an extrajudicial source" or "such a high degree of favoritism or antagonism as to make fair judgment impossible." (Internal quotation marks omitted.) *Eychaner v. Gross*, 202 Ill. 2d 228, 281 (2002). Nichols presented no explanation as to how the prior ruling revealed extrajudicial

the scheduled hearing, unless otherwise ordered. Failure to provide timely courtesy copies will result in the matter not being heard. If courtesy copies have not been timely provided, the court may only consider agreed orders." (Emphasis in original.) Standing Order, Judge David B. Atkins, Calendar 59 (Nov. 17, 2010).

[9]The entry of the final order in this case did not preclude Nichols from still pursuing her petition; in Illinois, the trial court retains jurisdiction for 30 days following the entry of a final order. See 735 ILCS 5/2-1401 (West 2010); *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220 (1986).

bias or "a high degree of favoritism or antagonism." While Nichols could have offered such evidence at a hearing, as stated previously, Nichols carried the burden of presenting her petition to the court and failed to do so. Because Nichols did not present her petition for hearing, we are limited to the record before us, and under these facts the petition should have been denied.

¶ 18                                        CONCLUSION

¶ 19        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 20        Affirmed.

¶ 21        JUSTICE GORDON, dissenting.

¶ 22        I must respectfully dissent. In its decision today, the majority concludes that a judge may enter a final order disposing of a case while a petition to substitute that judge for cause is pending.

¶ 23        In the case at bar, *pro se* defendant Tijuana Nichols filed a petition for substitution of judge for cause pursuant to section 2-1001(a)(3) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1001(a)(3) (West 2010)) on December 7, 2011, and set the petition to be heard on January 26, 2012. On January 25, 2012, the day before the hearing on Nichols' petition, the trial judge entered an order approving the sale of the property. It is not clear whether Nichols appeared in court on January 25 or January 26, but, "[i]n any event, the record does indicate the trial court never entered an order granting or denying Nichols' petition for substitution of judge." *Supra* ¶ 5. As I will explain, since the petition for substitution of judge was never ruled upon, we must vacate the trial court's final order as void.

¶ 24        Nichols' petition was filed pursuant to section 2-1001(a)(3) of the Code, which provides that "[u]pon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition." 735 ILCS 5/2-1001(a)(3)(iii) (West 2010). However, a party's right to have a petition for substitution heard by another judge is not automatic. *In re Estate of Wilson*, 238 Ill. 2d 519, 553 (2010). An application for substitution of judge for cause "shall be made by petition, setting forth the specific cause for substitution and praying a substitution of judge. The petition shall be verified by the affidavit of the applicant." 735 ILCS 5/2-1001(a)(3)(ii) (West 2010). The judge sought to be removed must refer the petition to another judge for a hearing on whether cause exists only if it finds that the party seeking the substitution satisfies the threshold requirements set forth in the Code. *Wilson*, 238 Ill. 2d at 553-54. In the case at bar, the trial court did not make such a finding, since it did not consider Nichols' petition at all.

¶ 25        "[O]nce a motion for substitution of judge for cause is brought, that judge loses all power and authority over the case and any orders entered after a judge's removal or after an improper denial of such a motion are of no force or effect." *In re Petition of C.M.A.*, 306 Ill.

App. 3d 1061, 1067 (1999) (citing *Jiffy Lube International, Inc. v. Agarwal, Inc.*, 277 Ill. App. 3d 722, 727 (1996), *People v. Bell*, 276 Ill. App. 3d 939, 946-47 (1995), and *In re Marriage of Cummins*, 106 Ill. App. 3d 44, 47 (1982)).

¶ 26    The majority concludes that the above quote from *C.M.A.* is not the law, because "we no longer find [that the three cases cited by *C.M.A.*] still stand for the proposition cited in *C.M.A.*" *Supra* ¶ 10. I do not agree. First, while it is true that, as the majority notes, *In re Marriage of Cummins*, 106 Ill. App. 3d 44, 47 (1982), concerned a substitution of judge as a matter of right, the proposition for which *Cummins* was cited is the relatively uncontroversial point that any order entered after an improper denial of such a motion is void, a point which is not at issue in the instant appeal, since Nichols' motion was not denied–properly or improperly–by the trial court.

¶ 27    Second, the majority dismisses *C.M.A.*'s citation to *People v. Bell*, 276 Ill. App. 3d 939 (1995), because it "is a criminal case governed by a separate criminal statute not applicable here." *Supra* ¶ 11. However, the appellate court in *Bell* considered section 114-5(d) of the Code of Criminal Procedure of 1963 (the Code of Criminal Procedure) (725 ILCS 5/114-5(d) (West 1992)), finding that once a motion for substitution of judge is properly brought, the trial judge loses all power and authority over the cause except to make the necessary order to transfer the cause to another judge for a hearing on the motion. *Bell*, 276 Ill. App. 3d at 947. Our Illinois Supreme Court has stated that section 2-1001(a)(3) of the Code is "the civil counterpart to section 114-5(d) of the Code of Criminal Procedure" and "is virtually identical" to the language of section 114-5(d). *Wilson*, 238 Ill. 2d at 553, 563. Moreover, in interpreting section 2-1001(a)(3) of the Code, our supreme court has stated that "[b]ecause the statutes deal with similar subject matter, we *** assume that by using the same language in section 2-1001(a)(3) as it did in section 114-5(d), the legislature intended for it to be construed and applied similarly." *Wilson*, 238 Ill. 2d at 564. Indeed, despite the majority's contention that the supreme court merely "state[d] as a general proposition" (*supra* ¶ 11 n.6) the statutes' similarity, in *Wilson*, our supreme court relied heavily on its interpretation of section 114-5(d) of the Code of Criminal Procedure in its analysis of section 2-1003(a)(3) of the Code. See *Wilson*, 238 Ill. 2d at 553-54, 556-57, 562-64. Accordingly, *Bell* "still stand[s] for the proposition cited in *C.M.A.*" (*supra* ¶ 10) and its interpretation of section 114-5(d) is still useful in interpreting section 2-1001(a)(3).[10]

¶ 28    Third, the majority concludes that *C.M.A.*'s citation to *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722 (1996), is no longer supported by the law because the Illinois Supreme Court in *Wilson* "has since effectively overruled the language from *Jiffy Lube* upon which the court in *C.M.A.* relied." *Supra* ¶ 11 (citing *Wilson*, 238 Ill. 2d at 559-60).

_____

[10]Our supreme court's treatment of section 2-1001(a)(3) of the Code in relation to section 114-5(d) of the Code of Criminal Procedure also demonstrates why the majority's dismissal of Nichols' argument based on section 114-5 is flawed. See *supra* ¶ 9. While Nichols' brief mentions section 114-5(a), which is the section the majority interprets as "the criminal counterpart of the controlling civil statute" (*supra* ¶ 9), her brief also quotes section 114-5(d), which is the section the majority should be interpreting, since it concerns substitutions for cause and is the section that the supreme court has explicitly stated is identical to section 2-1001(a)(3).

However, the majority's conclusion grossly mischaracterizes the supreme court's treatment of *Jiffy Lube* in *Wilson*.

¶ 29    In *Wilson*, the supreme court considered whether, upon the filing of a petition for substitution of judge for cause pursuant to section 2-1001(a)(3) of the Code, a judge was automatically required to refer the petition to another judge, even in the event that the petition on its face failed to comply with threshold procedural and substantive requirements. *Wilson*, 238 Ill. 2d at 522. The appellate court had determined that automatic referral to another judge was necessary, and the supreme court reversed. *Wilson*, 238 Ill. 2d at 522. In addressing the appellate court's decision, the supreme court noted that the appellate court had relied on *Jiffy Lube* and *In re Marriage of Schweihs*, 272 Ill. App. 3d 653 (1995). The supreme court acknowledged that both cases relied upon by the appellate court addressed section 2-1001(a)(3) of the Code, but noted that "neither involved the question presented by this case," thereby distinguishing *Jiffy Lube* on its facts. *Wilson*, 238 Ill. 2d at 558. The supreme court's entire discussion concerning *Jiffy Lube* is as follows:

> "In *Jiffy Lube* ***, the court applied the plain language of section 2-1001(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(3) (West 2006)) to conclude that the defendant's motion for substitution of judge should not have been heard by the judge named in the petition. In so doing, however, it did not hold, directly or indirectly, that petitions for substitution were in some way exempt from the threshold requirements we have discussed in this opinion. To the contrary, referencing our prior opinion in *In re Marriage of Kozloff*, 101 Ill. 2d 526 (1984), the court recognized that a petition for substitution could be dismissed as untimely where it was not filed at the earliest practical moment after the prejudice was discovered. It went on to conclude, however, that a timeliness challenge could not be successfully asserted in the case before it because, under facts of the case, the petition was timely." *Wilson*, 238 Ill. 2d at 559.

Thus, the supreme court in no way "effectively overruled" (*supra* ¶ 11) any part of *Jiffy Lube*. In fact, the supreme court emphasized that *Jiffy Lube* "did not hold, directly or indirectly, that petitions for substitution were in some way exempt from the threshold requirements" (*Wilson*, 238 Ill. 2d at 559) at issue in *Wilson* and "[t]o the contrary, *** recognized that a petition for substitution could be dismissed as untimely where it was not filed at the earliest practical moment after the prejudice was discovered" (*Wilson*, 238 Ill. 2d at 559), thereby making it absolutely clear that *Jiffy Lube*–in no way–was inconsistent with the supreme court's holding in *Wilson*.

¶ 30    The majority attempts to twist the supreme court's criticism of the decision it was reversing into a criticism of *Jiffy Lube* by stating that, "[i]nstead of applying the plain or literal interpretation of the statute, as the appellate court did in *Jiffy Lube*, the court should have interpreted the statute in a way that did not 'produce absurd, inconvenient or unjust results.' " *Supra* ¶ 12 (quoting *Wilson*, 238 Ill. 2d at 560). The majority then quotes the *Wilson* court's discussion of the potential for abuse by litigants if it adopted the *Wilson* appellate court's interpretation of the statute. *Supra* ¶ 12 (quoting *Wilson*, 238 Ill. 2d at 561, 562). However, this discussion has absolutely nothing to do with *Jiffy Lube*–the inclusion of *Jiffy Lube* in this section could just as easily be any case in which a court applied the plain meaning of a statute. It is no small matter to contend that the supreme court has overruled

a case when it has not done so explicitly. It is the majority in this case that has overruled *Jiffy Lube* by a stroke of the pen. This is contrary to the law as made and provided. Here, where the supreme court distinguished *Jiffy Lube* on its facts and specifically noted that it was not inconsistent with *Wilson*, the majority's contention that *Wilson* "effectively overrule[d] the relevant portions of *Jiffy Lube*" (*supra* ¶ 13) is simply wrong. *Jiffy Lube* remains good law and, accordingly, was properly relied upon by *C.M.A.*

¶ 31   Indeed, the majority claims that *Jiffy Lube* was "effectively overruled" because the *Wilson* appellate court "should have interpreted the statute in a way that did not 'produce absurd, inconvenient or unjust results.' " *Supra* ¶ 12 (quoting *Wilson*, 238 Ill. 2d at 560). However, it is the majority's interpretation of section 2-1001(a)(3) today that leads to an absurd and unjust result. Under the majority's reading of the statute, the trial court need not decide even whether the petition has satisfied the statute's threshold requirements–the trial court may simply refuse to consider it at all and enter an order disposing of the case. That cannot be correct, fair, or the way our legal system works.

¶ 32   As we noted in *C.M.A.*, "once a motion for substitution of judge for cause is brought, that judge loses all power and authority over the case, and any orders entered after a judge's removal or after an improper denial of such a motion are of no force or effect." *C.M.A.*, 306 Ill. App. 3d at 1067. Accordingly, the trial judge in the case at bar did not have the authority to enter the order approving sale prior to the disposition of Nichols' petition to substitute the judge for cause and I must dissent from the majority's conclusion to the contrary.

¶ 33   I also take issue with the majority's statement that "after taking into consideration the supreme court's interpretation of the statute, we do not find a judge's power and authority in a case after the filing of a for-cause petition is limited to merely making a threshold determination on the petition for substitution of judge." *Supra* ¶ 13. In its interpretation of section 2-1001(a)(3), the supreme court in *Wilson* did not make any mention of whether the trial judge may take other actions while the petition for substitution is pending. Its analysis was contained to the issue before it–whether the judge sought to be substituted could make the threshold determination on the petition. Indeed, to the extent that *Wilson* can be read as speaking to the interpretation of section 2-1001(a)(3) concerning this issue, *Wilson* is contrary to the majority's argument.

¶ 34   In *Wilson*, as noted, the supreme court noted that section 2-1001(a)(3) was "virtually identical" to section 114-5(d) of the Code of Criminal Procedure (*Wilson*, 238 Ill. 2d at 563) and that, "by using the same language in section 2-1001(a)(3) as it did in section 114-5(d), the legislature intended for it to be construed and applied similarly" (*Wilson*, 238 Ill. 2d at 564). In interpreting section 114-5(d), however, courts have held that, generally, "once a motion for substitution of judge is properly brought[,] a judge loses all power and authority over the cause." *Bell*, 276 Ill. App. 3d at 947. See also *People v. Harvey*, 379 Ill. App. 3d 518, 521 (2008); *People v. Antoine*, 335 Ill. App. 3d 562, 571 (2002). Thus, by interpreting section 2-1001(a)(3) in light of the interpretation of section 114-5(d) of the Code of Criminal Procedure, as the *Wilson* court indicated was proper, reversal is required in the case at bar because the trial court had no authority to enter the order approving sale while the petition for substitution was pending.

¶ 35    The majority claims that, regardless of the interpretation of section 114-5(d) of the Code of Criminal Procedure, the supreme court in *Wilson* "specifically construe[d] section 2-1001(a)(3) in a way that avoids the 'disruption' to the litigation that would occur if 'unscrupulous litigants' were allowed to frivolously stall any case at any time" and that "this interpretation of the relevant civil provision recently offered by our supreme court controls over any previous interpretation of the relevant criminal provision offered by this court." *Supra* ¶ 11 n.6 (quoting *Wilson*, 238 Ill. 2d at 561-62). However, in *Wilson*, our supreme court also recognized that both section 2-1001(a)(3) and section 114-5(d) "are to be liberally construed to promote rather than defeat the right of substitution." *Wilson*, 238 Ill. 2d at 553. The *Wilson* court did not treat all petitions for substitution for cause as frivolous vehicles for delay filed by unscrupulous litigants, as the majority seems to do.

¶ 36    I must emphasize that the issue before the *Wilson* court concerned the threshold determination of whether the petition satisfied the Code's timing, pleading, and procedural requirements and the *Wilson* court's discussion of potential for abuse by litigants occurred in that context. Nowhere in its opinion did the *Wilson* court discuss the abuse of such petitions in the event that the petition satisfied the threshold requirements, and its discussion of abuse by litigants specifically relates only to that context. The full quotation of the *Wilson* court's discussion of abuse by litigants, rather than the selection quoted by the majority, highlights the limited context of the court's statement:

> "If it were literally true that a hearing on whether there was cause for substitution had to be conducted by another judge '[u]pon the filing of a petition for substitution' [citation], an unscrupulous litigant could effectively bring an immediate halt to any pending civil case, at any time, without regard to when the basis for the petition for substitution was discovered, without regard to whether the petition set forth the specific cause for which substitution was requested, and without regard to whether the petition was accompanied by the affidavit of the applicant or met any procedural requirements to which civil proceedings are normally subject. The disruption this could create for the conduct of litigation is self-evident.
>
> Empowering litigants to unilaterally halt pending trial proceedings without first meeting any threshold timing, pleading, or procedural requirements would be unprecedented in our system of justice." *Wilson*, 238 Ill. 2d at 560-61 (quoting 735 ILCS 5/2-1001(a)(3)(iii) (West 2006)).

We should not interpret our supreme court's concerns in this specific context to apply to all petitions for substitution for cause, especially since, as noted, our supreme court recognized that section 2-1001(a)(3) is "to be liberally construed to promote rather than defeat the right of substitution." *Wilson*, 238 Ill. 2d at 553.

¶ 37    Finally, I cannot agree with the majority's attempt to place blame on Nichols for failure to file a courtesy copy of her petition with the trial court. First, the only indication that Nichols failed to file a courtesy copy of her petition appears in Deutsche Bank's brief, where it states that "[u]nder information and belief, Appellant failed to drop of [*sic*] courtesy copies *** of her motion to the Judge." Second, Nichols filed her petition on December 7, 2011, and set it for hearing on January 26, 2012, as evidenced by the file-stamped copy of the

notice of motion and the petition in the record. Neither the majority nor Deutsche Bank has provided any case law holding that, due solely to the lack of a courtesy copy, a trial court may refuse to rule on a filed petition. While the majority quotes the circuit court's standing order indicating that lack of a courtesy copy may result in a matter not being heard, there is no indication that the matter will not be *decided*. Moreover, the petition here was filed over a month prior to the hearing date. Even if there was some delay in the trial court's knowledge of its own docket, a month is surely enough time to impute notice to the trial court.

¶ 38    In sum, Nichols filed a petition for substitution of judge for cause. That petition was not referred to another judge, nor did the judge in this case ever determine whether the threshold requirements were satisfied. The petition was not ruled upon at all. Instead, the trial judge entered an order approving the sale of the property the day before Nichols' petition to substitute the same judge for cause was scheduled to be heard. I would find that the judge did not have the authority to enter the order, thereby rendering the order void, and remand the case to resolve the pending petition.